IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

MILJANIC MATUTE VALLECILLO,

    Petitioner,

v.

MICHAEL BRECKON, et al.,

    Respondents.

CIVIL ACTION NO.: 5:24-cv-78

## REPORT AND RECOMMENDATION

Petitioner Miljanic Vallecillo ("Vallecillo"), who was housed at the Folkston Immigration and Customs Enforcement ("ICE") Processing Center in Folkston, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus through counsel.[1]  Doc. 1.  Respondents filed a Motion to Dismiss, and Vallecillo filed a Response.  Docs. 8, 11.  For the following reasons, I **RECOMMEND** the Court **DENY** Respondents' Motion to Dismiss, **GRANT** Vallecillo's § 2241 Petition, and **DIRECT** Respondents or other ICE officials to conduct an individualized bond determination hearing for Vallecillo as soon as practicable.  I decline to take judicial notice of or make a recommendation concerning which party should bear the burden at this individualized bond hearing.

## BACKGROUND

Vallecillo is a native and citizen of Honduras.  Doc. 1 at 4; Doc. 8-1 at 1.  Vallecillo entered the United States on or around June 2, 2017, and he was taken into immigration custody on July 24, 2017.  Doc. 8 at 2.  Vallecillo was issued a notice to appear on July 31, 2017.

---

[1]     Upon information and belief, Vallecillo is no longer housed at the ICE Processing Center in Folkston, Georgia; rather, he is detained at a facility in El Paso, Texas.  Docs. 12, 14.

Vallecillo petitioned the United States Citizenship and Immigration Services ("USCIS") for a non-immigrant visa on November 14, 2018, which the USCIS approved on February 6, 2020. An immigration judge dismissed Vallecillo's removal proceedings on May 4, 2020.  Id.; Doc. 8-1 at 1–2.  Vallecillo pleaded guilty to conspiracy to transporting illegal aliens and to transporting illegal aliens on February 14, 2022, after Texas authorities arrested him on October 23, 2021.  Doc. 8 at 2.  Vallecillo received a sentence of time served on both counts on June 15, 2022.

Vallecillo entered ICE custody on June 17, 2022, and was issued a notice to appear charging him as inadmissible under the Immigration and Nationality Act ("INA") two days later.  Vallecillo admitted the allegations contained in the notice to appear and filed an application for relief for removal on August 1, 2022.  Id. at 2–3.  On October 18, 2022, the parties appeared before an immigration judge for a merits hearing, but the immigration judge granted a continuance due to the country condition expert being unable to attend that hearing.  Doc. 8-1 at 3.  The immigration judge conducted a hearing on November 30, 2022, and issued a written decision denying Vallecillo's application for relief and ordered him removed to Honduras on January 12, 2023.  Vallecillo appealed.  Although the Board of Immigration Appeals ("BIA") remanded in part for the immigration judge to reassess Vallecillo's credibility, the BIA agreed with the immigration judge's decision to deny Vallecillo's motion to administratively close and to terminate on January 3, 2024.  Id. at 4.  As of November 25, 2024, the Department of Homeland Security's ("DHS") motion to reinstate Vallecillo's proceedings was still pending.  Id. at 5.

In his Petition, Vallecillo asserts he has been in ICE's custody for more than 29 months at the time he filed his Petition, without a bond hearing, resulting in his detention being

unconstitutionally prolonged.  Doc. 1 at 9, 20–21.  Vallecillo asks for an individualized bond hearing at which the Government must show Vallecillo's detention is justified.  Id. at 28.

The Government argues that Vallecillo is subject to mandatory detention under 8 U.S.C. § 1226(c) and his detention does not violate due process; thus, his request for a bond hearing should be denied.  Doc. 8 at 1, 4–10.  If the Court finds Vallecillo is entitled to a hearing, Respondents argue that Vallecillo should bear the burden at that hearing.  Id. at 12–13.  Respondents also argue that Vallecillo's conditions of confinement claim is not cognizable in habeas.  Id. at 13–14.

## DISCUSSION

Vallecillo, through counsel, asserts that his detention has become unconstitutionally prolonged under the factors set forth in Sopo v. U.S. Attorney General ("Sopo I"), 825 F.3d 1199 (11th Cir. 2016), vacated, 890 F.3d 952 (11th Cir. 2018).

Section 1226 of Title 8 of the United States Code governs detention of certain aliens during removal proceedings.  Section 1226(a) sets out the default rule, which permits, but does not require, the Attorney General to detain an individual while removal proceedings are ongoing.  Jennings v. Rodriguez, 583 U.S. 281, 288 (2018).  Section 1226(c), however, "carves out a statutory category of aliens who may *not* be released under § 1226(a)."  Id. (emphasis in original).  Specifically, § 1226(c) states that the Attorney General "shall take into custody any alien" who has a conviction within certain categories of criminal offenses.  Thus, § 1226(a) provides for discretionary detention for aliens until removal proceedings are complete (as long as certain conditions are met), but § 1226(c) eliminates that discretion and imposes mandatory detention for certain aliens, in particular aliens who committed offenses involving aggravated

3

felonies.  Section 1226(c) does not on its face set a time limit on the length of detention but, instead, requires aliens be held until a final removal decision has been made.

> In fact, by allowing aliens to be released "only if" the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute.  And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue "pending a decision on whether the alien is to be removed from the United States."

Jennings, 583 U.S. at 303 (quoting § 1226(a)).

The record in this case demonstrates that Vallecillo is subject to mandatory detention under § 1226(c) due to his convictions for conspiracy to transport illegal aliens and illegal alien transport.  Doc. 8-1 at 22, 24, 33.  On January 12, 2023, the immigration judge ordered Vallecillo removed to Honduras.  Id. at 3.  On November 21, 2024, DHS filed a motion to reinstate proceedings with the BIA, and Vallecillo filed his opposition on November 25, 2024.  Id. at 5.  Vallecillo's proceedings remain pending, as far as the Court is aware.

Vallecillo challenges the length of detention as violative of his right to procedural due process.  It is well established that aliens present in the United States are entitled to Fifth Amendment due process protections in deportation proceedings.  Reno v. Flores, 507 U.S. 292, 306 (1993).  The United States Supreme Court has also recognized, however, that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." Demore v. Kim, 538 U.S. 510, 523 (2003).  By statute, any alien who is inadmissible or deportable by reason of having committed certain enumerated criminal offenses after the alien has been released from criminal incarceration must be taken into and held in custody.  8 U.S.C. § 1226(c).  In Demore, the Supreme Court held § 1226(c) does not—on its face—violate the due process rights of criminal aliens who are detained for the limited period of their removal proceedings.  538 U.S. at 513.  However, the Court left open the possibility of as-applied

4

procedural due process challenges to § 1226(c) detention, where continued detention becomes unreasonable or unjustified. Id. at 531–33 (Kennedy, J., concurring).

In the years since Demore, many courts construed § 1226(c) as authorizing detention only for a "reasonable" amount time, so as to avoid resolving the constitutional challenges presented by extended § 1226(c) detention. See Sopo I, 825 F.3d at 1213–14 (collecting cases and adopting similar construction of § 1226(c)), vacated on other grounds, 890 F.3d 952 (11th Cir. 2018). However, in Jennings, the Supreme Court rejected this construction of § 1226(c) and the use of the constitutional-avoidance canon, recognizing that the statute requires mandatory detention of certain aliens until the conclusion of their removal proceedings and the provision cannot be construed to impose a "reasonableness" limitation. 583 U.S. at 298. But, again, the Court left open the possibility of as-applied procedural due process challenges to § 1226(c) detention, particularly where the petitioner alleges the detention has become unreasonably prolonged.

To determine if a procedural due process violation has occurred, courts must determine whether a petitioner was deprived of a protected interest, and, if so, whether constitutionally adequate due process was afforded. See Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982); Bank of Jackson Cnty. v. Cherry, 980 F.2d 1362, 1366 (11th Cir. 1993). For "aliens" involved in removal proceedings, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Vallecillo has plainly established a deprivation of his freedom from confinement. Therefore, to resolve Vallecillo's Petition, the Court must determine whether he was afforded constitutionally adequate due process.

As noted above, § 1226(c) has been held to be facially constitutional, see generally Demore, and courts have deemed detention under that provision constitutional, so long as the detention is justified and not unreasonably prolonged. Vallecillo recognizes that § 1226(c) is the basis for his detention, but he contends the detention has been unreasonably prolonged. Doc. 1 at 20.

Courts in the Eleventh Circuit confronted with procedural due process challenges to prolonged detention under § 1226(c) have looked to Sopo I for guidance on evaluating the challenges. See Lukaj v. McAleenan, Case No. 3:19-cv-241, 2019 WL 4979745, at *6 (M.D. Fla. Oct. 8, 2019), vacated on other grounds, 2020 WL 248724 (M.D. Fla. Jan. 16, 2020); Moore v. Nielsen, No. 418CV01722, 2019 WL 2152582, at *10 (N.D. Ala. May 3, 2019). Those courts consider the reasoning of Sopo I concerning statutory construction of § 1226(c), recognize that the Supreme Court rejected use of the constitutional-avoidance canon in Jennings, and note that the Eleventh Circuit later vacated its opinion in Sopo I. Importantly, those courts also recognize that the analysis in Sopo I concerning prolonged § 1226(c) detention remains persuasive and is particularly instructive when assessing the constitutionality of prolonged § 1226(c) detention. Lukaj, 2019 WL 4979745, at *6 (recognizing while "vacated opinions are void and have no legal effect[,]" "they can still have persuasive value"); Moore, 2019 WL 2152582, at *10 ("In assessing the constitutional avoidance doctrine, the Eleventh Circuit affirmatively answered the due process question in [Sopo I]."). I agree. In applying the constitutional-avoidance canon in Sopo I, the Eleventh Circuit construed § 1226(c) to include a limit that avoided unconstitutional application of the statute. The same analysis is highly instructive for determining if prolonged detention under § 1226(c) does, in fact, violate a petitioner's right to procedural due process.

In Sopo I, the Eleventh Circuit explained it is appropriate to use a case-by-case approach to determine whether an alien's detention under § 1226(c) is reasonable (as opposed to adopting any sort of bright-line rule concerning the length of the petitioner's detention). 825 F.3d at 1215. In conducting the case-by-case evaluation, a court should consider, among other things: (1) the amount of time the alien has been in detention without a bond hearing; (2) the cause of the protracted removal proceedings (i.e., whether the petitioner or the government has improperly delayed the proceedings); (3) whether it will be possible to remove the alien upon the issuance of a final order of removal; (4) whether the period of civil immigration detention exceeds the time the alien spent in prison for the crime that rendered the alien removable; (5) whether the facility at which the alien is civilly detained is meaningfully different from a penal institution; and (6) the likelihood the removal proceedings will conclude in the near future. Id. at 1217–18. I address each factor, as applied to Vallecillo's case.

I. **The Length of Vallecillo's Detention Without a Bond Hearing**

Regarding the first factor—the length of detention without a bond hearing—the Eleventh Circuit noted that § 1226(c) detention without a bond hearing is likely reasonable for up to six months but "may often become unreasonable by the one year mark, depending on the facts of the case." Id. at 1218. Critically, the Eleventh Circuit explained in the context of prolonged § 1226(c) detention, procedural due process does not require automatic release of a criminal alien once the detention is unreasonably prolonged but, instead, requires the government to afford the alien an individualized bond inquiry. Id.

At the time of filing his Petition on October 23, 2024, Vallecillo had been in ICE's custody for more than 29 months' time, or since June 17, 2022, without a bond hearing, and that amount of time is presumptively unreasonable under Circuit precedent. At the time Respondent

7

filed his Motion to Dismiss on December 3, 2024, Vallecillo had been in custody for almost 31 months' time. And as of the date of this Report, Vallecillo will have been in ICE's custody for nearly 35 months' time without a bond hearing, as far as this Court is aware.

Vallecillo has been in detention without a bond hearing since June 17, 2022, and there is nothing before the Court indicating that he has received any individualized bond hearing. Thus, as of the issuance of this Report, Vallecillo has been in ICE's custody for more than 34 months' time without a hearing or bond determination. This period far exceeds the presumptively reasonable period of 12 months. This factor weighs strongly in Vallecillo's favor.

## II.     Delay in Proceedings

Vallecillo's immigration proceedings have been ongoing since July 2022. During this time, Vallecillo sought and received representation, and both Vallecillo and the Government have exercised their rights to petition and appeal. In addition, there have been some remands for procedural reasons. As of the date Respondents filed their Motion to Dismiss, Vallecillo's proceedings still have not concluded. This protraction cannot be attributed to either party. While the parties have been responsible for certain delays in the proceedings, there is no evidence either party has acted in bad faith or with dilatory motives. For instance, the delays in prosecution cannot be attributed to bad faith or other ill motive on the Government's part, as those delays appear to be ordinary or customary in many immigration cases. Moreover, any delays with Vallecillo's defense cannot be attributed to bad faith or ill motive on Vallecillo's

part, as Vallecillo needed time to address and resolve his legal representation and other matters. This factor is neutral.

### III.   Possibility of Removal

The Government states removals to Honduras are ongoing with no travel ban in place and Vallecillo's removal should pose no problem once any removal order becomes final.  Doc. 8 at 8.

Under this factor—whether it will be possible to remove Vallecillo upon the issuance of a final order of removal—Vallecillo offers nothing for the Court to weigh; instead, counsel states Vallecillo's removal to Honduras is "practically possible[,]" but finality in his case "is still far[.]" Doc. 1 at 22.  This factor weighs in Respondent's favor.  Vallecillo offers nothing to refute his removal is a possibility, even if that possibility may be more remote in time than he wishes.

### IV.   Length of Civil Detention Relative to Length of Criminal Incarceration

Vallecillo has been detained in ICE's custody since June 2022, which is a period of at least 29 months' time.  Doc. 1 at 23–24; Doc. 8 at 8.  Based on the parties' briefing, Vallecillo was in custody on his criminal convictions for a period of approximately 8 months' time. Because Vallecillo's time in civil detention is significantly more than the time he spent in criminal custody, this factor weighs in Vallecillo's favor.  Respondents agree this factor weighs in Vallecillo's favor.  Doc. 8 at 8.

### V.   Facility Conditions

Vallecillo contends his detention at the Folkston ICE Facility is not meaningfully different from a penal institution or criminal detention.  Doc. 1 at 24.  Vallecillo states he is in a cramped cell with a cellmate, has to wear orange prison garb, was assigned a medium/high security classification, is limited in when he can leave his cell, and has no physical contact with people outside of detention, save medical care providers.  Id. at 24–27.

On this record, I find Vallecillo has shown his detention at the Folkston ICE Facility is not meaningfully different from a penal institution or criminal detention. The evidence of record supports Vallecillo's position. Respondents concede this factor weighs in Vallecillo's favor.[2] Doc. 8 at 9. Based on this record, I find this factor favors Vallecillo.

## VI.    Likelihood of Detention Concluding in Near Future

There is nothing before the Court indicating when Vallecillo's removal proceedings will conclude. The record before the Court reveals that Vallecillo was ordered removed to Honduras in January 2023. Doc. 8 at 3. Vallecillo appealed the removal order, and the BIA affirmed in part and dismissed in part the immigration judge's decision. Doc. 8-1 at 4, 43–49. On February 15, 2024, DHS moved for an expedited decision. In addition, DHS filed a motion to reinstate on November 21, 2024, doc. 8 at 4, which remains pending. The Court has no additional information about when Vallecillo's detention will conclude. Therefore, I find this factor also weighs in Vallecillo's favor.

On balance, the Sopo I factors indicate Vallecillo is entitled to an individualized bond determination hearing. Four of these factors weigh in Vallecillo's favor, one factor weighs in Respondents' favor, and one is neutral. Based on these circumstances, Vallecillo should have an individualized bond hearing. Vallecillo has been in ICE's custody for more than 35 months, and there is no information when his immigration proceedings will conclude. Accordingly, Respondents' Motion is due to be denied. Vallecillo's Petition is due to be granted, and he should have an individualized bond inquiry. This is not to say Vallecillo is entitled to bond, only

---

[2] As noted above, Respondents assert Vallecillo's assertions regarding the conditions of his confinement cannot serve as the basis of a stand-alone habeas claim. Doc. 8 at 14. While this is a correct statement of the law, the Court views Vallecillo's assertions regarding the conditions of his confinement to be in support of his arguments on the Sopo factors, not a separate claim.

that he should have an individualized bond determination hearing.  In addition, I decline to make a recommendation as to which party should bear the burden of proof at this hearing.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **DENY** Respondents' Motion to Dismiss, **GRANT** Vallecillo's § 2241 Petition, and **DIRECT** Respondents or other ICE officials to conduct an individualized bond hearing as soon as practicable.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of

Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 29th day of April, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA